**INTERCOUNTY CONSTRUCTION COMPANY, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent.**

No. 74–1172.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1974.

Decided July 23, 1975.

Certiorari Denied Jan. 19, 1976.

See 96 S.Ct. 854.

Guy F. Driver, Jr., Greenville, S. C. (Robert T. Thompson, Melvin Hutson, Thompson, Ogletree & Deakins, Greenville, S. C., on brief), for petitioner.

Harry R. Silver, Atty., U. S. Dept. of Justice (Carla A. Hills, Asst. Atty. Gen., William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Assoc. Sol. for Occupational Safety and Health, Michael H. Levin, Stephen C. Yohay, William S. Cumings, Stanton R. Koppel, Attys., U. S. Dept. of Justice, on brief), for respondent.

Before BOREMAN, Senior Circuit Judge, and FIELD and WIDENER, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Intercounty Construction Company (company) appeals from a decision of the Occupational Safety and Health Review Commission (Commission) which found that the company committed a "willful" violation [1] of the employment safety provisions of section 5(a) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 654(a) as defined by regulation promulgated by the Secretary of Labor pursuant to section 6 of the Act, 29 U.S.C. § 655, which regulation is set forth in 29 C.F.R. § 1926.652(c).[2] The company was cited for the violation after two telephoned reports of violations of safety standards prompted an inspection of the company's job site by two regional officers of the Occupational Safety and Health Administration (OSHA) on April 13, 1972. The citation ordered abatement of the hazard and levied a $10,000 fine, a civil penalty. The company protested the citation and the Secretary of Labor issued a formal complaint. A trial was had before an Administrative Law Judge who sustained the citation on January 30, 1973. That decision was reviewed by the full Commission which entered an opinion on December 26, 1973, affirming the finding

---

1. 29 U.S.C. § 666 provides different penalties for various types of violations ranging from nonserious, serious, willful, and to a willful violation which causes death. A willful violation may be penalized by a civil fine of not more than $10,000. The statute does not define "willful."

2. 29 C.F.R. § 1926.652(c) provides:

Sides of trenches in hard or compact soil, including embankments, shall be shored or otherwise supported when the trench is more than 5 feet in depth and 8 feet or more in length. In lieu of shoring the sides of the trench above the 5-foot level may be sloped to preclude a collapse, but shall not be steeper than a 1-foot rise to each ½-foot horizontal. When the outside diameter of a pipe is greater than 6-feet, a bench of 4-foot minimum shall be provided at the toe of the sloped portion.

that the company had committed a willful violation but reducing the fine to $5,000.00.

The facts of the violation were that the company was engaged in laying a large sewer pipe for the County of Arlington, Virginia; the pipe was placed in a trench 10.7 feet deep and 17 feet wide; the trench was not braced, shored, or sloped to prevent cave-ins as required by the regulation; a laborer at the job site informed OSHA of this violation by telephone on April 12, 1972; OSHA informally contacted the company urging abatement of the hazard; in response, the company placed a protective device known as a "mule"[3] in the trench; the "mule" was removed before work was completed on April 12; the same laborer again informed OSHA of work being undertaken in the trench without the "mule" or other protective devices on April 13; OSHA then sent two inspectors to the job site and their report led to the contested citation.

The evidence presented to the Administrative Law Judge was conflicting as to whether work was performed in the ditch after removal of the "mule" on the afternoon of April 12, and as to whether other means of protection obviated the need for additional protective devices as to that work, *if* any work was undertaken in the ditch. In essence, the company contended that even if workers were in the trench, the presence of a concrete manhole provided sufficient shoring on one side while the other side was properly sloped so that the company was substantially in compliance with the safety regulation, or, at least, the company had a good-faith basis for believing that it had met the requirements. However, the inspectors in their report found it to be implausible that *no* work was undertaken in the trench after removal of the mule, and they discounted the safety value of the manhole while attributing any claimed sloping of the trench walls in the work area to be the result of

a cave-in. The Administrative Law Judge resolved these conflicts in favor of the inspectors and further determined that the conduct of the company was flagrant rather than a good-faith effort to comply. His resolution of the matter was affirmed by the full Commission and, while the Commission agreed that the violation was willful, it declined to characterize the company's acts as flagrant and reduced the penalty. This appeal followed.

The company again urges that the record contains no substantial evidence to support a finding that workmen were in an unprotected area after the mule was removed, arguing that there was no indication that workers were actually in the ditch, and that the area was, in any event, protected. The company further contends that the decisions of the Administrative Law Judge and of the full Commission do not meet the requirements of findings of fact as set forth in the Administrative Procedure Act, 5 U.S.C. § 557. Finally, the company contends that, *if* a violation did occur the finding that it was willfully committed is arbitrary, capricious, and contrary to established law in light of the good-faith belief held by the job foreman that the area was safe. We find these contentions to be without merit and affirm the decision of the Commission.

Only one of these issues requires extended discussion. When faced with a problem of statutory construction we accord great deference to the interpretation given the statute by the officers or agency charged with its administration. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *N. L. R. B. v. Hearst Publications,* 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). We agree with the position adopted by the Commission in interpreting the statute that "willful" means action taken knowledgeably by one subject to the statutory provisions in disregard of the action's legality. No showing of

---

**3.** A mule is a portable steel shield used to protect laborers from a cave-in. This particu-

lar mule had dimensions of 20 feet in length feet in height, and 8 feet in width.

malicious intent is necessary. A conscious, intentional, deliberate, voluntary decision properly is described as willful, "regardless of venial motive." *F. X. Messina Construction Corp. v. Occupational Safety and Health Review Commission,* 505 F.2d 701, 702 (1 Cir. 1974). The facts here indicate such a conscious, deliberate decision. After the company was advised by OSHA that protective measures were necessary and had placed the "mule" in the trench to achieve compliance it intentionally removed the "mule" from the trench. Regardless of any good-faith belief that the work area remained safe the fact is that the company knowingly chose not to comply with the OSHA regulations and requirements. That decision was a willful action in violation of the law.

■ In reaching this conclusion we are not unmindful of the holding of the Third Circuit which found willfulness, in this statute, as connoting the element of "obstinate refusal to comply." *Irey v. Occupational Safety and Health Review Commission,* 519 F.2d 1200 (3 Cir. 1974). However, we decline to require the Commission to find such a bad purpose before it sustains a citation for a willful violation. To require bad intent would place a severe restriction on the statutory authority of OSHA to apply the stronger sanctions in enforcing the law, a result we do not feel was intended by Congress. Rather, we agree with the Commission that willfulness is used in the mere cognitive sense in civil statutes, and connotes bad purpose only when an element of a criminal act. *United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381 (1933); *Yarborough v. United States,* 230 F.2d 56, 61 (4 Cir. 1956). Therefore, to the extent that *Irey, supra,* requires a finding of bad purpose in order to justify the imposition of civil penalties for a willful violation, we are not inclined to follow that decision.

Our result is supported by the definition of willful utilized in the context of other civil penalties. It has been held, in a civil action enforcing the FLSA, that an employer's conduct is willful when there is substantial evidence to support a finding that the employer *knew* that his actions might violate the law. *Coleman v. Jiffy June Farms,* 458 F.2d 1139, 1142 (5 Cir. 1972). In this instance, the company *knew* that the removal of the "mule" would violate the regulation. Thus, it acted willfully as that word is defined for purposes of civil actions.

■ The application of the civil definition of willful also follows logically from the requirements of the Occupational Safety and Health Act. In the section concerning the duties of employers and employees, it is provided that "[e]ach employer . . . shall comply with occupational safety and health standards promulgated under this chapter." 29 U.S.C. § 654(a)(2). The penalty to be imposed here is to be applied against "[a]ny employer who willfully or repeatedly violates the requirements of section 654 . . . ." 29 U.S.C. § 666(a). That the company violated the requirements of § 654 by failing to discharge its duty to comply with a safety standard promulgated under the Act is clear. The question, whether the company "willfully" did so within the meaning of § 666 would seem to have been answered by the Supreme Court.

> [W]e are persuaded that it [willfully] means purposely or obstinately and is designed to describe the attitude of a [person], who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements. *United States v. Illinois Central Railroad,* 303 U.S. 239, 243, 58 S.Ct. 533, 535, 82 L.Ed. 773 (1938).

We conclude that when § 666 penalizes an employer who willfully violates the requirements of § 654, Congress intended to punish the conduct of one who "intentionally disregards the statute or is plainly indifferent to its requirements," or, to punish the conduct of one who *knew* that his actions might violate the law. *Coleman v. Jiffy June Farms, supra.*

That the company, when it violated the prescribed standard after a warning from OSHA, acted with indifference to the law and *knew* that it was violating a safety standard is also clear. The company's conduct here properly is characterized as willful within the meaning of 29 U.S.C. § 666(a). Having determined that the Commission has correctly defined the word "willful" as used in the statute and that the conduct of the company comes within that definition on the facts in this case, we affirm the decision of the Commission.

*Affirmed.*